BREEDEN (Joseph R.), Plaintiff and Appellant, v. BREEDEN (Lenore I.) and others, Defendants: POLK COUNTY, Defendant and Respondent.

*December 4, 1958—January 2, 1959.*

For the appellant there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar, Jr.*

For the respondent there was a brief by *D. E. Jensen,* district attorney, attorney, and the *Attorney General* and *Albert Harriman,* assistant attorney general, of counsel, and oral argument by *Mr. Harriman.*

HALLOWS, J.    The issue is whether there existed a mutual mistake which would entitle the plaintiff to have the deed reformed. The trial court did not find any mistake in fact but concluded the parties had some erroneous belief concerning the law of joint tenancies. While the trial court's findings are somewhat incomplete on the reasons for the

plaintiff taking title to the land in joint tenancy with his mother, such finding may be supplemented by the written decision of the trial court. *Estate of Wallace* (1955), 270 Wis. 636, 72 N. W. (2d) 383; *Estate of Olson* (1955), 271 Wis. 199, 72 N. W. (2d) 717; *Nickel v. Theresa Farmers Co-operative Asso.* (1945), 247 Wis. 412, 20 N. W. (2d) 117.

At the time of the execution of the land contract Mr. Baker, real-estate agent for the seller, told Mrs. Breeden, who accompanied her son, that she had better sign the contract too because the plaintiff was in poor health and it would prevent the necessity of probate. Both the plaintiff and his mother relied on the statements of the real-estate dealer in executing the land contract and while they did not understand all the consequences of joint tenancy they both knew they signed the land contract as joint tenants. Mrs. Breeden knew if anything happened to her son that she would own the property.

The plaintiff's testimony was somewhat conflicting. He knew his mother signed and he saw her sign the contract but claims he did not read it. He also claims he never wanted his mother's name on the papers but went along with the idea and did not object. After the contract was executed it was kept at the Bank of Clear Lake, where the plaintiff made his payments. When these were completed the sellers executed and delivered to the Bank of Clear Lake a deed dated October 16, 1950, in which the plaintiff and his mother were named as joint tenants. This deed was prepared by the bank in accordance with the land contract and was recorded by the bank. The plaintiff claims he did not see the deed until 1957. However, he testified that he expected the deed to be made out to him and his mother in accordance with the agreement.

About the time the plaintiff completed making the payments his father applied for old-age assistance. A hearing

was held on October 17, 1950, at which time the plaintiff testified that title to the property was in both his and his mother's names and that Mr. Baker said it was done that way because the plaintiff was sick all the time and it would prevent the necessity of probate. In 1955 Mrs. Breeden applied for old-age assistance. Polk county knew of her interest in the property but it would have granted old-age assistance regardless of whether or not she had any interest in the property. Upon granting her old-age assistance Polk county filed its lien. In 1957 the plaintiff attempted to sell the property and discovered the lien. We conclude from a review of the testimony that the great weight and clear preponderance of the evidence was not contrary to the findings of fact.

Findings of fact of a trial court will not be set aside unless they are contrary to the great weight and clear preponderance of the evidence. *Swazee v. Lee* (1951), 259 Wis. 136, 47 N. W. (2d) 733; *Lerner v. Lerner* (1948), 252 Wis. 87, 31 N. W. (2d) 208; *Ische v. Ische* (1948), 252 Wis. 250, 31 N. W. (2d) 607.

This is not a case where through mutual mistake an oral agreement was incorrectly reduced to writing. The plaintiff and his mother intended to sign the land contract as joint tenants.

To reform a deed on the grounds of mistake the mistake must be mutual between or common to all the parties to the instrument. *Lange v. Andrus* (1957), 1 Wis. (2d) 13, 83 N. W. (2d) 140. There was no mutual mistake between the parties. The most that can be said of the testimony, construing it most favorably to the plaintiff, is that he and his mother did not understand all the consequences of their act. The fact that parties to a contract do not foresee all the legal consequences of their acts does not establish a mutual mistake. Very few contracts would exist as written if reformation could be had merely by showing that some

parties thereto did not have in mind at the time of execution all the legal implications and consequences of their choice of language.

The appellant relies on *Shearer v. Pringle* (1930), 203 Wis. 164, 233 N. W. 623. In this case Mrs. Pringle refused to sign an extension of the mortgage in her individual capacity. She was then advised to sign it as administratrix, which she was told would save her from any personal obligation, which both parties believed and intended. However, under the contract as written that effect did not follow. The court reformed the instrument to effectuate the intentions of the party because of this mutual mistake. In the instant case there is no evidence that at the time of the execution of the contract the parties mutually understood a certain legal consequence should not follow from the language used. It was stated in the *Pringle Case* that equity would relieve from mutual mistake of law as well as of fact. This is immaterial here because of the lack of a mutual mistake of any kind.

*Kovacs v. Hoag* (1953), 263 Wis. 139, 56 N. W. (2d) 829, also relied upon by the appellant, is not in point. In the *Kovacs Case* this court reformed an agreement for the exchange of real estate on the grounds of a mutual mistake. The plaintiff thought he was signing the agreement and mortgage as the owner when in fact he signed as a witness. It was undisputed the parties who exchanged their properties intended that the owners of the one property were to become the owners of the other property, and *vice versa*. Through a mistake the plaintiff's name was not included in the deed and the intent of the parties was not truly represented in the written agreement.

In the instant case the intention was that the plaintiff and his mother were to be joint tenants. The deed so provided but the plaintiff and his mother did not understand all the implications thereof. In *La Rosa v. Hess* (1951), 258 Wis.

557, 46 N. W. (2d) 737, this court held an instrument will not be reformed if the only grounds shown are that one party misunderstood the legal effects of the instrument or because each of the parties gave his own interpretation to it.

This is another unfortunate case of persons following the advice of another lay person rather than obtaining competent legal advice from an attorney. This is an unfortunate situation but not grounds for relief.

*By the Court.*—Judgment affirmed.